Mike Arias, Esq. (CSB #115385)
    mike@asstlawyers.com
Alfredo Torrijos, Esq. (CSB #222458)
    alfredo@asstlawyers.com
Jamie G. Goldstein, Esq. (CSB #302479)
    jamie@asstlawyers.com
**ARIAS SANGUINETTI STAHLE & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, CA 90045
Tel: (310) 844-9696
Fax: (310) 861-0168

Attorneys for Plaintiffs
and the Proposed Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY E. WEISS and JONATHAN WEISS, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>                Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Amy E. Weiss and Jonathan Weiss ("Plaintiffs"), individually and on behalf of all others similarly situated, make the following allegations based upon information and belief, except as to those allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for restitution, monetary damages and injunctive relief against defendant Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"), demanding a trial by jury.

## NATURE OF THE ACTION

1.    Plaintiffs bring this class action against Defendant Volkswagen Group of America, Inc. to recover damages and other relief available at law and in equity on behalf of themselves as well as on behalf of the members of a Nationwide Class and California Class.

2.    While diesel passenger vehicles make-up more than 50% of all cars sold in Europe, in the U.S. diesel-powered vehicles comprise less than 3% of new vehicles sales. While various factors account for this difference, one critical factor is U.S. consumer perception. To many U.S. consumers the word "diesel" brings to mind the smoke-belching school bus they rode as kids or the rumbling big-rig next to them on the highway. As for diesel-powered passenger vehicles, many U.S. consumers' experience is limited to grandpa's old, loud, sluggish and smoky sedan. In short, diesel cars have had a serious image problem in the U.S.

3.    In 2008 Volkswagen, which accounts for about 70% of all diesel passenger vehicles sold in the U.S., sought to change all of that when it announced its new "TDI Clean Diesel" engine systems. According to Volkswagen, its new generation of diesel cars "ain't our daddy's diesel." Volkswagen promised that its new diesel cars are fast, efficient and – most importantly – clean.

/ / /

/ / /

4.      Volkswagen's promises, however, were entirely premised on a lie – a lie so perfectly orchestrated and carefully concealed that it not only fooled consumers for over seven years, but it completely evaded the entire automotive industry and press and even federal and state regulators.  Indeed, as outlined below, Volkswagen's deceit was only discovered by mere chance.

5.      The fact is that Volkswagen was not able to manufacture diesel-powered cars that provide the speed, responsiveness and efficiency that Volkswagen promised while concurrently being able to meet federal and state emission standards.  Instead of simply offering less powerful and efficient cars that could meet federal and state emission standards – or devoting its engineering talent to designing cars that could deliver on all of its promises – Volkswagen decided to cheat.

6.      On one level, Volkswagen's cheat is simple: since emission control necessarily involves a compromise between performance and emission (that is, reducing emissions invariably comes at the costs of reduced performance), Volkswagen decided that it would employ – or fully employ – its emissions controls only when the vehicle was undergoing an emissions test.   Once the emission testing is done, the emission controls are turned-off (or scaled back) in order to side-step the performance penalties that they would otherwise impose.

7.      On another level, Volkswagen's cheat is incredibly complex.  In order for a Volkswagen vehicle to successfully pass emissions test, the vehicle itself must somehow determine whether it is undergoing a test so that it can engage the emission controls.  Volkswagen, therefore, designed and implemented a "defeat device" – a sophisticated software algorithm that detected when the vehicle was being tested for emissions standards.  Knowing that emissions tests are done on a dynamometer, not on the road, Volkswagen's software algorithm analyzes various inputs (including the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure – all of which precisely track the

CLASS ACTION COMPLAINT

parameters of the federal test procedure used for emission testing) to determine whether the vehicle is undergoing an emissions test. If the vehicle's software algorithm determines that the car is undergoing an emissions test, the emission controls are fully activated. Once the vehicle determines that the emissions test is completed, the emission controls are less active.

8. Without its fraudulent "defeat device," Volkswagen would not have been able to sell any of the over 482,000 diesel Volkswagen and Audi vehicles that it sold in the United States since 2009.

9. This action arises from Volkswagen's implementation and concealment of its fraudulent "defeat device," which not only violates federal and California emissions standards but also constitutes fraudulent concealment, a violation of California's consumer protection statutes, and a breach of applicable warranties.

## PARTIES

10. Plaintiffs Amy and Jonathan Weiss are residents and citizens of Los Angeles County, California.

11. Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in each and every state of the United States as well as the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act (28 U.S.C. § 1332(d)). The aggregated claims of the individual class members exceed $5,000,000, exclusive of interest and costs, at least one class member is of diverse citizenship from one defendant, and there are more than 100 class members.

CLASS ACTION COMPLAINT

13.     This Court has personal jurisdiction over Defendant because it conducts business in California and has sufficient minimum contacts with California.  For example, Defendant operates the Volkswagen Electronic Research Laboratory in Belmont, California, the Volkswagen Design Center in Santa Monica, California, and the Volkswagen Group of America Test Center California in Oxnard, California, which includes Defendant's emission compliance laboratory.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to plaintiffs and other class members residing in this District.

## FACTUAL ALLEGATIONS

### A.     Diesel-Powered Passenger Vehicles Sales in the United States and  Diesel's "Image Problem"

15.     While diesel engines power most of the commercial trucks, buses, trains, ships, and off-road machinery used in this country, their use in passenger vehicles is significantly less common.   Indeed, as of 2014, diesel-powered passenger vehicles in the U.S. accounted for less than 3% of new vehicles sales.

16.     As explained in a February 2015 New York Times article titled, *As the World Embraces Diesels, Americans Still Play Hard to Get*, while numerous factors (including, for example, higher vehicle prices and higher fuel costs) account for the relatively low sales of diesel-powered passenger vehicles in the United States, one of the biggest obstacles facing diesel-powered vehicles in the U.S. is simply an "image problem."  As the New York Times article put it:

> "Quiet" and "diesel" are two words not usually seen together. When American consumers think of diesel-engine vehicles – if they think about them at all – other

words most likely come to mind, like "noisy," "smoky" and "slow."

17.     Volkswagen has been cognizant of – and particularly sensitive to – diesel's "image problem" in the U.S.  In March of 2013, Volkswagen released the results from its first annual "Clean Diesel IQ Survey," which surveyed 1,511 U.S. gasoline, hybrid and clean diesel drivers in order to measure "the attitudes, opinions and beliefs about clean diesel vehicles among current gasoline, hybrid and clean diesel drivers."  According to Volkswagen, a major insight from the survey is what Volkswagen labeled the "Clean Diesel Time Warp."

18.     In a March 28, 2013 press-release, Volkswagen explained the "Clean Diesel Time Warp" as follows:

> There is broad recognition among all drivers that diesels today are better than they were 10 years ago, but gasoline and hybrid drivers still only believe they are "somewhat" better and clean diesel drivers recognize the vast improvements.  ***More than one-third of gasoline and hybrid drivers believe that clean diesel vehicles are noisy and smell bad.***

[Emphasis added.]

19.     In its March 2013 press-release, Volkswagen went on to state: "The 'Clean Diesel Malingers' are entrenched in the diesel time warp, with one-in-five gasoline and hybrid owners classifying clean diesel vehicles ***as being dirty*** and three-in-five clean diesel owners classify these vehicles as clean." [Emphasis added.]

20.     While today's market share of for diesel-powered passenger vehicles in the United States is small, it was much worse less than two decades ago. Indeed, today's 3% market share represents a tremendous increase in diesel-powered passenger vehicles.  According to the *Transportation Energy Data Book (Edition 18)*, in 1998 diesel-powered passenger vehicles comprised a mere 0.1% of

CLASS ACTION COMPLAINT

automobile sales in the U.S.

21.    The dramatic increase in the number of diesel-powered passenger vehicles sold in the U.S. has been led by – and, indeed, largely driven by – Volkswagen, which is responsible for about 70% of all U.S. diesel car sales.

22.    Volkswagen's success in the U.S. market can be directly attributed to the company's well-orchestrated campaign to counteract diesel's image problem in the U.S.

**B.    Volkswagen's "Clean Diesel" Marketing Campaign**

23.    To counteract diesel's image problem in the U.S., Volkswagen embarked on a major marketing campaign emphasizing its diesel vehicles' low emissions and environmental friendliness.    At the center of Volkswagen's campaign, was its "TDI Clean Diesel" engine systems.



24.    On January 23, 2008, Volkswagen issued a press-release touting its new "Clean Diesel" vehicles.    The press-release not only emphasized that Volkswagen's "Clean Diesel" vehicles met federal and state emission standards (including the federal Clean Air Act's "Tier 2/Bin 5" standard and California's Air Resource Board's "LEV II" standard) but also specifically touted the vehicles' low nitrogen oxide (NOx) emissions:

CLASS ACTION COMPLAINT

Volkswagen of America, Inc. today unveiled its cleanest diesel ever for the U.S., the Jetta TDI.   Additionally, the company announced that this new clean diesel will be available to the U.S. market in the spring of 2008. ***This Jetta TDI will meet emissions standards applicable in all 50 states, including the most stringent "TIER 2/BIN 5" or "LEV II/LEV" requirement limiting nitrogen oxide (NOx) emissions to 0.05 g/mile.***

This clean diesel Jetta meets the lowest emissions standards without the use of urea injection. ***Instead, a nitrogen oxide storage catalyst reduces NOx emissions by up to 90 percent.*** The engine management system in the Jetta changes operating modes periodically to treat the NOx that has been stored in the catalytic converter. A particulate filter in the exhaust system further reduces emissions.

The Jetta TDI is one of the first products of the BLUETEC offensive initiated jointly by Audi, Mercedes-Benz, and Volkswagen.  The goal of this partnership is to establish the concept of BLUETEC as a uniform label for clean and highly fuel efficient diesel-powered cars and SUVs with 50-state compliant engines.   BLUETEC denotes diesel power plants that comply with the strictest emissions regulations of the US market. ***The technologies individually developed by each manufacturer serve to reduce NOx in particular – an exhaust element more prevalent in a diesel engine.***

[Emphasis added.]

25.    Following the release of its "TDI Clean Diesel" engine systems, Volkswagen embarked on a systematic and well-orchestrated marketing campaign to convince U.S. consumers that its diesel-powered vehicles were environmentally friendly.

/ / /

/ / /

26.    For example, Volkswagen produced and distributed a campaign regarding its "TDI Clean Diesel" vehicles specifically touting that its diesel vehicles were environmentally friendly and that they "meet the strictest EPA standards in the U.S."



27.    That same campaign also touted Volkswagen's "Think Blue" program, claiming a policy of being "more responsible on the road and more environmentally conscious – not just in our cars."

28.    The brochures and webpages for Volkswagen's "TDI Clean Diesel" vehicles carried the same message, enforcing and reiterating Volkswagen's marketing campaign to convince U.S. consumers that its diesel-powered vehicles

were environmentally friendly.

29.    For example, on the webpage for the vehicle purchased by Plaintiffs (a 2015 Volkswagen Golf TDI SportWagen), Volkswagen claimed:



30.    As with other advertisement and marketing campaigns, the webpage for Plaintiffs' vehicle also touted Volkswagen's "Think Blue" program:



31.    Volkswagen's website repeatedly claims that it takes, "environmental responsibility very seriously" and when making its "cars as green as possible, Volkswagen has an integrated strategy focused on

CLASS ACTION COMPLAINT

reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

32.    By all accounts, Volkswagen's "Clean Diesel" campaign has been a resounding success.  Not only did U.S. sales of Volkswagen's diesel cars increase dramatically during the course of its campaign, but Volkswagen also won numerous "environmental" awards for its diesel-powered vehicles, including the Green Car of the Year for its 2010 Audi A3 TDI and 2009 Volkswagen Jetta TDI – awards that we now know were premised on data that was intentionally manipulated by Volkswagen.

33.    Not only were Volkswagen's representations false, Volkswagen engaged in a sophisticated intentional scheme to conceal the truth from consumers of regulators.

**C.    U.S. Emissions Standards and Volkswagen's "Defeat Device" Scheme Used to Circumvent Those Standards**

34.    The United States, through the Environmental Protection Agency ("EPA"), has laws and regulations to protect citizens from pollution.  Automobile manufacturers are required to abide by these laws and regulations.

35.    The California Air Resources Board ("CARB"), is the "clean air agency" in California.  The program goal is to reduce the pervasive air pollution affecting the main metropolitan areas in the state, particularly in Los Angeles, where prolonged pollution episodes are frequent.   All new vehicles sold in California must be certified to one of six California Air Resources Board emissions ratings.

36.    Both the EPA and CARB set stringent limits on the amount of nitrogen oxides ("NOx") that vehicles may release into the environment.  NOx are produced from the reaction of nitrogen and oxygen gases in the air during combustion, especially at high temperatures.  Regulators' focus on NOx is driven

by the serious – and deleterious – effects that this compound has on the environment and human health. NOx reacts with ammonia, moisture, and other compounds to form nitric acid vapor and related particles, which can penetrate deeply into and damage sensitive lung tissue. In addition, NOx reacts with volatile organic compounds in the presence of sunlight to form ozone, which can cause adverse effects such as damage to lung tissue and reduction in lung function. Finally, NOx is a greenhouse gas that contributes to global warming.

37. The federal Clean Air Act prohibits the sale of any vehicle in the United States that does not comply with emissions regulations set by the EPA. The current regulations, Tier 2, were implemented by the EPA between 2004 and 2009, and apply to all light-duty vehicles regardless of the fuel that they use. The Class Vehicles are certified under the "Tier 2/Bin 5" standard, which provides that the vehicle may not emit more than .05 grams of NOx per mile during the vehicle's first 5 years or 50,000 miles of use and may not emit more than .07 grams of NOx per mile during the vehicle's first 10 years or 120,000 miles of use.

38. For California, CARB adopted the "LEV II" emission standards which were phased-in from 2004 through 2010. Manufacturers may certify vehicles to LEV II emission standards until model year 2019. Under the LEV II standard, passenger cars may not emit more than 0.05 grams of NOx per mile during the vehicle's first 5 years or 50,000 miles of use and may not emit more than .07 grams of NOx per mile during the vehicle's first 11 years or 120,000 miles of use.

39. Federal and California regulations require vehicle manufacturers to apply for certifications that their vehicles meet applicable emission standards. Vehicles cannot be sold in the U.S. unless and until they are certified by the EPA. In addition to EPA certification, vehicles sold in California must also be certified by CARB.

40. In addition to obtaining certification from the EPA and CARB,

CLASS ACTION COMPLAINT

vehicle manufacturers must provide consumers with information regarding the vehicle's emission certification and certain emission information for the vehicle. Specifically, a "Vehicle Emission Control Label" must be attached to every vehicle.   In addition, the every vehicle must include an "Environmental Performance Label" that provides a Smog Score and Global Warning Score.  The "Environmental Performance Label" for Plaintiffs' vehicle provided the following information:



41.    As manufactured and sold, the Class Vehicles did not meet the above emission standards.   Rather than manufacture vehicles that could meet these standards, Volkswagen elected to implement a fraudulent "defeat device" scheme in order to fool regulators and illegally obtain certification that the Class Vehicles meet the applicable emission standards.

42.    Volkswagen's fraudulent "defeat device" scheme had two goals. First, to allow the Class Vehicles to obtain certification that they met applicable emissions standards which the vehicles did not actually meet.  And, second, to actively conceal from regulators – and consumers – the existence of the "defeat device."

43.    Volkswagen's success in concealing the "defeat device" in the Class Vehicles is best illustrated by the fact that Volkswagen was able to successfully conceal the "defeat device" from regulators since at least 2009.  Indeed, it is pure serendipity that regulators were able to discover Volkswagen's "defeat device."

44.    Two years ago, the International Council on Clean Transportation ("ICCT") was testing the real-world performance of so-called clean diesel cars in Europe and found that the on-road emissions of some models were notably higher than those measured in lab testing.  Based on the those results, the ICCT decided to test diesel-powered cars in the United States, which are subject to the more strict "Tier 2/Bin 5" emissions standards than the standards in force in Europe at the time.  The ICCT, with the assistance of CARB, tested the cars in the lab on a dynamometer and then compared those measurements with measurements taken during real-world use of the vehicles.    In comparing these two sets of measurements, the ICCT and CARB discovered that the Class Vehicles had substantially higher emissions during real-world tests.  Indeed, the testing revealed that during real-world testing the Class Vehicles had NOx emissions that were up to 40 times greater that the legal limits imposed by the EPA and CARB.

45.    These findings ultimately resulted in the EPA issuing Notice of Violation to Volkswagen on September 18, 2015.  As explained in the Notice of Violation, the drastic difference between the measured emissions during lab testing and real-world testing can only be explained through Volkswagen's implementation of a "defeat device" that is able detect when the vehicle is undergoing an emissions certification test.  When the Class Vehicles'

software determines that the vehicle is undergoing an emissions certification test, the software enables full emissions controls, allowing the vehicle to successfully pass the test. Once the vehicle determines that testing is complete, the vehicle's full emissions controls are no longer engaged, causing the vehicle to emit NOx up to 40 times greater than the allowable amount per federal and state regulations and laws. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

46. Amazingly, when Volkswagen was first confronted the discrepancy between lab test and real-world test results, Volkswagen denied – for more than a year – any wrongdoing, asserting that discrepancies between pollution tests on its diesel cars and the starkly higher levels out on the road were a technical error, not a deliberate attempt to deceive regulators. It was not until September 3, 2015 – after the EPA threatened to withhold approval for the company's 2016 Volkswagen and Audi diesel models – that Volkswagen admitted that the Class Vehicles it sold in the United States were designed and manufactured with software to cheat on emission certification tests.

47. On September 23, 2015, after Volkswagen's fraudulent "defeat device" became public, Michael Horn, the head of Volkswagen Group of America, Inc., admitted Volkswagen's fraud, stating: "Let's be clear about this, our company was dishonest, with the EPA and the California Air Resources board, and with all of you and in my German words, we have totally screwed up."

48. Disengaging the pollution controls on a diesel-fueled enables the vehicle to yield better performance, including increased torque and acceleration. In an interview, Drew Kodjak, the executive director of the ICCT, explained: "When the pollution controls are functioning on these vehicles, there's a trade-off between performance and emissions."

49. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions,

cannot be certified.  By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition.

### D.    Loss Suffered by Plaintiffs and Class Members

50.    Volkswagen charges substantial premiums for its "TDI Clean Diesel" vehicles that include the illegal "defeat devices."  For example, according to Volkswagen's February 11, 2015 press-release, the diesel version of the 2015 Golf SportWagen purchased by Plaintiffs' has a $1,000 premium over the equivalent gas-powered version.

| Model and Trim | Gas Engine Price | Diesel Engine Price | Diesel Premium |
|---|---|---|---|
| 2015 Golf SportWagen S | $21,395 | $24,595 | $3,200 |
| 2015 Golf SportWagen TSI SE | $26,995 | $27,995 | $1,000 |
| 2015 Golf SportWagen TSI SEL | $29,345 | $30,345 | $1,000 |

51.    The price differential between the diesel-powered and gas-powered version of one of Volkswagen's most popular models, the Jetta, is even greater.

| Model and Trim | Gas Engine Price | Diesel Engine Price | Diesel Premium |
|---|---|---|---|
| 2015 Jetta S | $17,325 | $21,640 | $4,315 |
| 2015 Jetta SE | $22,325 | $24,075 | $1,750 |

52.    While Volkswagen may ultimately recall all Class Vehicles and attempt to repair them so as to comply with EPA and CARB emissions requirements, purchasers of the Class Vehicles have in the past and will continue in the future to suffer significant harm.

CLASS ACTION COMPLAINT

53.    It logically follows that any attempted repair – short of replacing or extensively modifying the engines and/or emission systems in the Class Vehicles – will necessarily come at the expense of some combination of performance (including horsepower and efficiency), reliability and longevity.  The result is that even if Volkswagen is able to make the Class Vehicles comply with federal and state emissions standards, owners of these vehicles will still suffer actual harm and damages because their vehicles will no longer perform as promised.

54.    In addition, the Class Vehicles have suffer a diminution in value in light of the "defeat device" implemented in those vehicles.  The cost of the vehicles was higher than the true worth and now the value has had a substantial decline.  Moreover, the vehicles that the Class members believed to be fuel efficient, are – or will be once the Class Vehicles are modified to comply with emission standards – in fact costing them substantially more in fuel.

55.    As a result of Defendant's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose the subject vehicles emit up to  40 times the allowed levels of emissions, Class members have suffered losses in money and/or property.

56.    Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  Moreover, when and if Defendant recalls the Class Vehicles and modifies the vehicles to make them compliant with federal and state emissions standards, Plaintiffs and Class members will be required to spend more on fuel, will not benefit from the performance qualities of their vehicles as advertised, and their vehicles will have lost value that they otherwise would not have lost had they been the vehicles that were advertised.

CLASS ACTION COMPLAINT

### E.    Plaintiffs' Experiences

57.    Plaintiffs purchased a new 2015 Volkswagen Golf TDI SportWagen in April 2015 from an authorized Volkswagen dealer in Los Angeles, California.

58.    Prior to their purchase, Plaintiffs researched several vehicles with their focus on environmentally friendly vehicles.    After extensive research, including the TDI Clean Diesel technology, Plaintiffs decided to purchase the 2015 Volkswagen Golf TDI SportWagen as it was touted as not only environmentally friendly, but also as having excellent performance qualities in comparison to other "green" vehicles.    Plaintiffs were unaware of the "defeat device" causing their vehicle to emit up to 40 times the permissible levels of pollutants into the environment.    Plaintiffs intentionally sought out an environmentally friendly vehicle and instead their vehicle did more harm than if they had bought a "non-green" vehicle that still met the EPA standards.    Not only did this cause extreme harm to the environment, but it also cost Plaintiffs out of pocket losses, repair costs, increased fuel costs and diminished value of their vehicle.    Plaintiffs reasonably relied on Volkswagen's false statements and purchased the vehicle with the belief it complied with emissions standards and was properly EPA certified and would retain these characteristics throughout the life of the vehicle.

### EXCEPTION TO THE STATUTE OF LIMITATIONS

59.    Any applicable statute of limitation that may potentially apply to bar the claims of any member of the Class is tolled based on delayed discovery and Volkswagen's active, fraudulent concealment.

60.    Pursuant to the delayed discovery rule, the accrual of Class members' claims are postponed until September 18, 2015, since Class members did not have actual or constructive knowledge of and could not have reasonably discovered the existence of Volkswagen's fraudulent "defeat device" prior to that date.

61.    Additionally, or in the alternative, Volkswagen knowingly and actively concealed the existence of the "defeat device" in the Class Vehicles. Volkswagen had a duty to inform consumers that the Class Vehicles contained a "defeat device" but Volkswagen knowingly concealed that fact from members of the Class. Accordingly, the fraudulent concealment exception tolls the statute of limitations on all claims herein until September 18, 2015.

## CLASS ALLEGATIONS

62.    Plaintiffs bring this action on behalf of themselves and as representatives of all others who are similarly situated.  Pursuant to Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of a Nationwide Class and a California Class.

63.    The Nationwide Class is initially defined as follows:

> *All persons who purchased or leased a "Class Vehicle"*
> *in United States (the "Nationwide Class").*

64.    The California Class is initially defined as follows:

> *All persons who purchased or leased a "Class Vehicle"*
> *in California (the "California Class").*

65.    For purposes of the above class definitions, "Class Vehicle" includes the following make and models with the 2.0 liter diesel engine:

- the 2009 to 2015 Volkswagen Jetta and Jetta SportWagen;
- the 2009 to 2015 Volkswagen Beetle and Beetle Convertible;
- the 2009 to 2015 Volkswagen Golf and Golf SportWagen;
- the 2014 to 2015 Volkswagen Passat; and
- the 2009 to 2015 Audi A3.

66.    Excluded from each of the above Classes are Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates,

CLASS ACTION COMPLAINT

legal representatives, predecessors, successors, and assigns of Defendant.  Also excluded are the judges and court personnel in this case and any members of their immediate families.

67.    Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

68.    This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Rule 23 of the Federal Rules of Civil Procedure.

69.    <u>Numerosity.</u> Fed. R. Civ. P. 23(a)(1).  The member of each Class is so numerous that joinder of all members is impractical.  Plaintiffs are informed and believe that there are hundreds of thousands of members of each of the Classes.  The precise number of Class members can be ascertained from Defendant's records.

70.    <u>Commonality and Predominance.</u> Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to each Class, which predominate over any questions affecting individual members of each respective Class.  These common questions of law and fact include, without limitation:

   a)  Whether the Class Vehicles, as sold or leased, comply with federal and/or state emissions standards;

   b)  Whether Volkswagen implemented a "defeat device" in the Class Vehicles;

   c)  Whether Volkswagen designed, manufactured, marketed, and/or distributed the Class Vehicles with a "defeat device";

   d)  Whether Volkswagen had a duty to disclose to consumers the existence of a "defeat device" in the Class Vehicles;

CLASS ACTION COMPLAINT

e) Whether Volkswagen had a duty to disclose to consumers the effect that a "defeat device" in the Class Vehicles had on the performance, fuel economy and reliability of the Class Vehicles;

f) Whether Volkswagen had a duty to disclose to consumers the effect that the discovery of a "defeat device" in the Class Vehicles would have on the value of the Class Vehicles;

g) Whether Volkswagen concealed the existence of a "defeat device" in the Class Vehicles from government regulators and/or consumers;

h) Whether Plaintiffs were injured as a result of Volkswagen's conduct as asserted herein;

i) Whether the "defeat device" in the Class Vehicles violates any federal and/or state laws or regulations;

j) Whether Volkswagen's marketing of the Class Vehicles was likely to deceive consumers;

k) Whether the existence of the "defeat device" in the Class Vehicles and/or its effects on the performance, fuel economy and reliability of the Class Vehicles would be considered material by an objectively reasonable person;

l) Whether Volkswagen's conduct violates warranty laws as asserted herein;

m) Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

n) Whether Plaintiffs and other Class members are entitled to damages and other monetary relief.

71. <u>Typicality.</u> Fed. R. Civ. P. 23 (a)(3). Plaintiffs' claims are typical of the claims of the Class they seek to represent. Plaintiffs and all Class members

were exposed to uniform practices and sustained injuries arising out of and caused by Defendant's unlawful conduct.

72.  <u>Adequacy.</u> Fed. R. Civ. P. 23(a)(4).  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

73.  <u>Superiority.</u> Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Volkswagen, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, Class members will continue to suffer losses and Volkswagen's misconduct will proceed without remedy.  Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court. Finally, Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

74.  <u>Injunctive and Declaratory Relief.</u> Fed. R. Civ. P.    23(b)(2). Defendant's unlawful and unfair conduct is uniform as to all members of each Class.  Defendant has acted or refused to act on grounds that apply generally to

each Class, so that final injunctive relief or declaratory relief is appropriate with respect to each Class as a whole.

## FIRST CLAIM FOR RELIEF
### Fraudulent Concealment
### (By Plaintiffs and the Nationwide Class, or, Alternatively, the California Class Against Defendant)

75.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 74, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

76.    Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class against Defendant.  Alternatively, Plaintiffs bring this claim individually and on behalf of the California Class against Defendant.

77.    Volkswagen knew at all material times that the Class Vehicles contained a "defeat device," that the Class Vehicles did not comply with federal and state emission standard, and that the Class Vehicles emitted NOx at levels as much as 40 times greater than permitted by law.

78.    These facts were not known to Plaintiffs and the Class.

79.    These facts concealed by Volkswagen were material to Plaintiffs and the Class, both because they concerned the quality of the affected vehicles – including their compliance with applicable federal and state law and regulations regarding clean air and emissions – and also because the facts significantly affect the value of the Class Vehicles as well as the operating costs and reliability of the Class Vehicles.

80.    Volkswagen had a duty to disclose the above known material facts because Volkswagen knew that these material facts were unknown to Plaintiffs and the Class, because Volkswagen was in a superior position of knowledge with regard to the Class Vehicles and the "defeat device," and because Volkswagen

chose to make certain representations (including that the Class Vehicles were environmentally friendly and complied with federal and state emission standards) that presented only a part of the true story and misled Plaintiffs and Class members about the Class Vehicles.

81.    Volkswagen's knowledge that the Class Vehicles contained a "defeat device," did not comply with federal and state emission standards and emitted NOx at levels as much as 40 times greater than permitted by law, combined with Volkswagen's knowledge that Plaintiffs and the Class relied and rely upon Volkswagen to communicate the true state of facts relating to Class Vehicles, creates a legal obligation on Volkswagen's part to disclose to Plaintiffs and the Class that the Class Vehicles contained a "defeat device," that the Class Vehicles did not comply with federal and state emission standard, and that the Class Vehicles emitted NOx at levels as much as 40 times greater than permitted by law.

82.    Plaintiffs and the Class were unaware of the above facts and had no way of reasonably learning the true facts.

83.    Plaintiffs and the Class would not have acted as they did if they had known of the concealed material facts.

84.    Plaintiffs and the Class reasonably relied and continue to rely upon Volkswagen to manufacture and sell vehicles that do not contain a "defeat device," that comply with federal and state emission standard, and that do not emit NOx at levels as much as 40 times greater than permitted by law.

85.    Volkswagen intentionally concealed and/or suppressed the above facts with the intent to defraud Plaintiffs and the Class.

86.    Volkswagen's concealment of the above facts has caused damage to Plaintiffs and the Class in an amount to be shown at trial.

87.    Volkswagen intended to deceive Plaintiffs and the Class by failing to disclose that the Class Vehicles contained a "defeat device," that the Class Vehicles did not comply with federal and state emission standard, and that the

Class Vehicles emitted NOx at levels as much as 40 times greater than permitted by law.

88.    Volkswagen acted maliciously, wantonly, oppressively, deliberately and with the intent to defraud.  Volkswagen acted with reckless disregard of Plaintiffs' and Class members' rights.  Accordingly, Volkswagen's conduct rises to a level that warrants punitive damages in an amount sufficient to deter such conduct in the future.

### SECOND CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code, §§ 17200, *et seq.*)**
**(By Plaintiffs and the California Class Against Defendant)**

89.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 74, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

90.    Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the California Class against Defendant.

91.    Plaintiffs have standing to pursue this cause of action as Plaintiffs have suffered injury in fact and have lost money or property as a result of Volkswagen's actions as delineated herein.

92.    Volkswagen's "defeat device" scheme, as delineated herein, constitutes unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code sections 17200, *et seq*.

93.    Volkswagen's business practices, as alleged herein, violate the "unfair" prong of California Business & Professions Code sections 17200, *et seq*. because: (i) the utility of Volkswagen's "defeat device" scheme is significantly outweighed by the gravity of the harm the scheme imposes on Plaintiffs and the Class; (ii) the injury suffered by Plaintiffs and the Class as a result of

CLASS ACTION COMPLAINT

Volkswagen's "defeat device" scheme is not one that Plaintiffs and the Class could have reasonably avoided; and (iii) Volkswagen's "defeat device" scheme runs counter to the environmental protection policies as reflected in the federal and California emissions standards.

94. Volkswagen's business practices, as alleged herein, violate the "unlawful" prong of California Business & Professions Code sections 17200, *et seq*. because they violate federal laws – including the section 203(a)(3)(B) of the Clean Air Act (42 U.S.C. § 7522(a)(3)(B)) and section 203(a)(1) of the Clean Air Act (42 U.S.C. § 7522(a)(1)) – and California laws, including laws governing vehicle emissions and testing requirements.

95. Volkswagen's business practices, as alleged herein, violate the "fraudulent" prong of California Business & Professions Code section 17200, *et seq*. because they are likely to deceive a reasonable consumer.

96. Accordingly, Volkswagen violated, and continues to violate, California Business and Professions Code section 17200's proscription against engaging in unlawful business acts or practices.

97. As a direct and proximate result of Volkswagens' unlawful, unfair, and fraudulent business practices, Plaintiffs and the California Class have suffered injury in fact and lost money or property, in that they bought or leased Class Vehicles that they otherwise would not have, overpaid for the Class Vehicles, and have, upon the discovery of the "defeat device" in the Class Vehicles have suffered a diminution in value of the vehicles.

98. Pursuant to California Business and Professions Code section 17203, Plaintiffs and the Class seek an order of this court enjoining Volkswagen from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts set forth in the complaint.

99. Plaintiff and the Class also seek an order requiring Volkswagen to make full restitution of all monies it wrongfully obtained from Plaintiffs and the

Class.

### THIRD CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act**
**(Cal. Civ. Code, §§ 1750, *et. seq.*)**
**(By Plaintiffs and the California Class Against Defendant)**

100.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 74, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

101.   Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the California Class against Defendant.

102.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, et seq. (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods to consumers.

103.   Plaintiffs and each member of the California Class are consumers as defined by California Civil Code § 1761(d).

104.   The Class Vehicles are "goods" as defined in California Civil Code § 1761(a).

105.   Volkswagen violated the CLRA in at least the following respects:

   i.   In violation of Civil Code § 1770(a)(2), Volkswagen misrepresented that the Class Vehicles had approval or certification, which the Class Vehicles do not have;

   ii.   In violation of Civil Code § 1770(a)(5), Volkswagen represented that the Class Vehicles had approval, characteristics, uses and benefits which they do not have

   iii.   In violation of Civil Code § 1770(a)(7), Volkswagen represented that the Class Vehicles were of a particular

standard, quality or grade, when in fact the Class Vehicles were of another – lesser – standard, quality and grade;

    iv. In violation of Civil Code § 1770(a)(9), Volkswagen advertised the Class Vehicles with the intent not to sell them as advertised; and

    v. In violation of Civil Code § 1770(a)(16), Volkswagen represented that the Class Vehicles had been supplied in accordance with a previous representation, when they had not.

106. Volkswagen knew, or should have known, that its representations and advertisements were false and misleading.

107. Plaintiffs and the other California Class members have suffered damages as a direct and proximate result of Volkswagen's actions in violation of the CLRA.

108. Plaintiffs, on behalf of themselves and for all similarly situated, seek an order from this Court under Civil Code § 1780(a)(2) enjoining Volkswagen from continuing to engage in the practices set forth in this complaint and a declaration that Volkswagen's conduct violates the CLRA.

109. Plaintiffs are not presently seeking compensatory or exemplary damages, pursuant to Sections 1780 and 1782(b) of California's Civil Code. Plaintiffs, however, will be serving Volkswagen, in accordance with section 1782(a) of the Civil Code, with notice of Volkswagen's alleged violations of the CLRA by certified mail, return receipt requested.  If Volkswagen fails to provide appropriate relief for its violations of the CLRA within 30 days of Plaintiffs' notification letter, Plaintiffs will seek to amend this complaint to seek compensatory and exemplary damages, pursuant to Sections 1780 and 1782(b) of California's Civil Code.

CLASS ACTION COMPLAINT

## FOURTH CLAIM FOR RELIEF
### Violation of California's False Advertising Law
### (Cal. Bus. & Prof. Code, §§ 17500, *et seq.*)
### (By Plaintiffs and the California Class Against Defendant)

110. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 74, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

111. Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the California Class.

112. California Bus. & Prof. Code § 17500 states: "It is unlawful for any ... corporation... with intent directly or indirectly to dispose of real or personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device,…or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

113. Volkswagen directly disseminated or caused to be disseminated statements, both in California and throughout the United States, regarding the Class Vehicles in advertisements, marketing materials and other publications that were untrue and/or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and/or misleading to consumers, including Plaintiffs and the other Class members.

114. Volkswagen's untrue and/or misleading statements regarding the Class Vehicles' compliance with federal and state emissions standards and the Class Vehicles' performance, fuel efficiency and reliability, as set forth in this Complaint, were material and likely to deceive a reasonable consumer, including

CLASS ACTION COMPLAINT

Plaintiffs and the other Class members.

115.   Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Volkswagen's untrue and/or misleading statements regarding the Class Vehicles, which constitute unfair, deceptive, untrue, or misleading advertising in violation of California's False Advertising Law (Cal. Bus. & Prof. Code, §§ 17500, *et seq.*)

116.   Plaintiffs and other Class members would not have purchased or leased the Class Vehicles  had they known of the deceptive nature of Volkswagen's untrue and/or misleading statements, or they would have paid less for the Class Vehicles.

117.   The wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business.  Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated.

118.   Plaintiffs, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class members any money Volkswagen acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## FIFTH CLAIM FOR RELIEF
**Breach of Implied Warranty of Merchantability (Cal. Com. Code, § 2314)**
**(By Plaintiffs and the California Class Against Defendant)**

119.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 74, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

CLASS ACTION COMPLAINT

120. Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the California Class.

121. Volkswagen is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

122. A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

123. At the time of sale and all times thereafter the Class Vehicles were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that they do not comply with federal and state emissions standards.

124. The EPA and individual state regulators conducted investigations and provided notice to Volkswagen.

125. Plaintiffs and the other Class members have had sufficient direct dealings with either Volkswagen or its agents to establish privity of contract between Plaintiffs and the other Class members. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealers were not the intended ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

126. As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

CLASS ACTION COMPLAINT

## SIXTH CLAIM FOR RELIEF

**Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability (Cal. Civ. Code, §§ 1791.1 & 1792) (By Plaintiffs and the California Class Against Defendant)**

127.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 74, inclusive, of this Complaint, as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

128.   Plaintiffs bring this claim on behalf of themselves and on behalf of the members of the California Class.

129.   Plaintiffs and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

130.   Plaintiffs and the other Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Volkswagen's conduct described herein.

131.   Volkswagen is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

132.   Volkswagen impliedly warranted to Plaintiffs and the other Class members that its Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

133.   Section 1791.1(a) of the California Civil Code provides:
"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

       (1)    Pass without objection in the trade under the contract description.

       (2)    Are fit for the ordinary purposes for which such goods are used.

CLASS ACTION COMPLAINT

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label.

134. The Class Vehicles would not pass without objection in the automotive trade because they fail to comply with federal and state emissions standards and were sold with an illegal "defeat device."

135. Because of the "defeat device" falsely causes Class Vehicles to obtain EPA certification and pass emissions tests when in fact they emit up to 40 times the permitted level of NOx, they are not safe to drive and thus not fit for ordinary purposes.

136. The Class Vehicles are not adequately labeled because the Volkswagen falsely represented that the Class Vehicles comply with federal and state emissions standards and fail to disclose the existence of the "defeat device."

137. Volkswagen breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the "defeat device," which deprived Plaintiffs and the other Class members of the benefit of their bargain.

138. As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of the Class Vehicles, the Class Vehicles' malfunctioning, the nonuse of Class Vehicles, and increased maintenance, repair and operating costs of the Class Vehicles.

139. Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

CLASS ACTION COMPLAINT

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and California Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.      Certification of the proposed Nationwide Class and California Class, including appointment of Plaintiffs as Class representatives and their counsel as Class Counsel;

B.      An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of a recall or free replacement program;

D.      Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E.      An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F.      An award of costs and attorneys' fees; and

G.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: September 23, 2015              ARIAS, SANGUINETTI, STAHLE
                                       & TORRIJOS, LLP

                                       By: ____/s/ Mike Arias____
                                           Mike Arias
                                           Alfredo Torrijos
                                           Jamie G. Goldstein

                                       *Counsel for Plaintiffs*
                                       *Amy E. Weiss and Jonathan Weiss*